UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NIZANDRA CRUZ,

    Plaintiff,

v.                                                    Case No.: 2:22-cv-603-KCD

COMMISSION OF SOCIAL
SECURITY,

    Defendant.
_____/

## **ORDER**

Plaintiff Nizandra Cruz challenges the Commissioner of Social Security's decision denying her application for Social Security Disability Insurance benefits under 42 U.S.C. § 405(g). (Doc. 25 at 9.)[1] For the reasons below, the Commissioner's decision is affirmed.

### **I. Background**

The procedural history, administrative record, and law are summarized in the parties' briefs (Doc. 25, Doc. 28, Doc. 29) and are not fully repeated here. Cruz filed for benefits claiming she was disabled as of August 10, 2013. (Tr. 1721.) In her application, Cruz alleged her disability stemmed from fibromyalgia, among other conditions. (Doc. 25 at 1.) Cruz's request for benefits

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

was denied and the decision upheld on reconsideration. (Doc. 25 at 4.) Cruz then exercised her right to a hearing before an Administrative Law Judge (ALJ).

Cruz has appeared before two ALJs. The first issued an unfavorable decision, which the Appeals Council vacated following an appeal. (Tr. 15-35; Doc. 28 at 1.) Accordingly, the Appeals Council remanded Cruz's application and reassigned it to a second ALJ, who issued the unfavorable decision now under review. (Tr. 1720-1753.)

The ALJ[2] reached his decision by applying the standard evaluation process. An individual claiming disability benefits must prove he is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the

---

[2] Hereafter, "the ALJ" refers solely to the second ALJ, Raymond Rogers.

national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

At step two, the ALJ found Cruz had several "severe" conditions, one of which was fibromyalgia. (Tr. 1724.) That said, at step three, he determined Cruz's impairments did not "meet[] or medically equal[] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P[.]" (Tr. 1724, 1726.) Thus, the ALJ had to assess Cruz's residual functional capacity ("RFC") before resolving her ability to work at steps four and five.

As for Cruz's RFC, the ALJ found she retained the ability to:

> lift and carry 10 pounds occasionally and 5 pounds frequently; sit for six hours in an eight hour workday; stand and/or walk for two hours in an eight hour workday; occasional climbing of ramps or stairs, but no climbing of ladders, ropes, or scaffolds; frequent balancing; occasional stooping, kneeling, and crouching; no crawling; frequent forward, lateral, and overhead reaching; frequent handling, fingering, and feeling...

(Tr. 1729.) In assessing Cruz's fibromyalgia, the ALJ also utilized the "pain standard." (Tr. 1729-30.) The pain standard applies "[w]here […] a claimant is trying to establish a disability through her own testimony of pain and subjective symptoms." *Bailey v. SSA, Comm'r*, 791 F. App'x 136, 141 (11th Cir. 2019). This "requires the claimant show: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity

3

of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Id*. "If a claimant testifies as to her subjective complaints of disabling pain and other symptoms, […] the ALJ must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations of completely disabling symptoms." *Id*. "This means that an ALJ's decision must rely on a factual basis for discounting a claimant's testimony regarding his or her subjective symptoms related to fibromyalgia, which can include a lack of proportionality between the Plaintiff's complaints of pain and the objective evidence, as well as inconsistencies in the Plaintiff's statements and actions." *Chambers v. Saul*, No. 18-24634-CIV, 2020 WL 4757336, at *8 (S.D. Fla. Apr. 29, 2020).

On this point, the ALJ found:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 1730.) The "medical evidence and other evidence" cited by the ALJ included objective evidence, such as measurements of Cruz's arm strength, and subjective evidence, including statements Cruz made to her doctors about her symptoms, daily activities, and pain. (Tr. 1730-40, 1745-46.)

4

Based on the entire record, which included vocational expert testimony, the ALJ concluded Cruz could not perform her past relevant work but could perform other sedentary jobs, such as that of medical supplies assembler, final assembler, electronics bonder, and stone setter. (Tr. 1751-52.) Because Cruz could work, the ALJ found her not disabled as that term is defined in this context. This appeal followed.

## II. Standard of Review

"It is the ALJ's job to evaluate and weigh evidence and to resolve any conflicts in the record." *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366-MRM, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021). Therefore, "[r]eview of the Commissioner's (and, by extension, the ALJ's) decision denying benefits is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied." *Holland v. Comm'r of Soc. Sec.*, No. 2:21-CV-858-KCD, 2023 WL 2300593, at *2 (M.D. Fla. Mar. 1, 2023). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a mere scintilla but less than a preponderance. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). As the Supreme Court has explained, "whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

When determining whether the ALJ's decision is supported by substantial evidence, the court must view the record as a whole, considering evidence favorable and unfavorable to the Commissioner. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. And even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Finally, "[u]nder a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports [her] position; [she] must show the absence of substantial evidence supporting the ALJ's conclusion." *Id*.

### III. Analysis

Cruz makes two arguments on appeal: (1) the ALJ improperly evaluated her subjective complaints about her symptoms and resulting limitations caused by fibromyalgia, and (2) the ALJ erred by failing to address a discrepancy between the vocational evidence and the Dictionary of Occupational Titles. (Doc. 25 at 10-11.) Both fail.

### A. The ALJ Properly Evaluated Cruz's Subjective Complaints and Resulting Limitations

Cruz first argues the ALJ erred in evaluating her subjective complaints and claimed limitations caused by fibromyalgia. According to Cruz, the ALJ placed an undue emphasis on the objective evidence. And to compound the

6

error, he also disregarded some of her limitations, including those caused by fibromyalgia-related bad days. (Doc. 25 at 11, 16.)

When considering an application for disability resulting from fibromyalgia, the ALJ will perform the same five-step evaluation process they would otherwise apply. Yet, because a claimant with fibromyalgia may not display objective symptoms, the Social Security Administration enacted SSR 12-2p, which "informs ALJs in how to consider fibromyalgia in the five-step process." *Meza v. Comm'r of Soc. Sec.*, No. 6:21-CV-222-DNF, 2022 WL 3025971, at *4 (M.D. Fla. Aug. 1, 2022). "Normally, a claimant's statements about her pain or other symptoms will not alone establish disability; there must also be objective medical evidence." *Marcus v. Comm'r of Soc. Sec.*, No. 6:21-CV-1745-KCD, 2023 WL 1860638, at *3 (M.D. Fla. Feb. 9, 2023). But given that fibromyalgia may not present objective symptoms, an ALJ may not reject it as an impairment based on a lack of objective evidence. *Gebauer v. Saul*, 801 F. App'x 404, 410 (7th Cir. 2020). In other words, a claimant may satisfy step two based solely on subjective evidence. *Id*.

However, SSR 12-2p is largely concerned with step two of the five-step process. *See Tillman v. Kijakazi*, No. 1:21-CV-79-AW-MJF, 2022 WL 3594903, at *1 (N.D. Fla. Aug. 23, 2022). The Rule "does not limit the evidence an ALJ can consider in evaluating the severity of fibromyalgia for purposes of determining a residual functioning capacity." *Gebauer*, 801 F. App'x at 410.

7

Indeed, SSR 12-2p states that objective evidence *is relevant* to the ALJ's analysis of a fibromyalgia claim:

> As with any claim for disability benefits, before we find that a person with an MDI of [fibromyalgia] is disabled, **we must ensure there is sufficient objective evidence** to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity.
>
> […]
>
> As in all claims for disability benefits, **we need objective medical evidence to establish the presence of an MDI**. When a person alleges [fibromyalgia], longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of the impairment.

SSR 12-2p (emphasis added).

As noted, at step two of his analysis, the ALJ determined Cruz had several "severe" conditions, including fibromyalgia. (Tr. 1724.) Once that was determined, the ALJ did not err by considering objective evidence in steps three, four, and five of his analysis. *Gebauer*, 801 F. App'x at 410. Any broadside attack Cruz makes about the ALJ relying on objective evidence is simply misplaced.

Cruz also criticizes the ALJ for placing "undue emphasis on the objective evidence of record in evaluating [her] fibromyalgia," and spends much of her brief identifying facts she believes were disregarded or misinterpreted. (Doc.

8

25 at 11, 16-41.) This argument impermissibly invites the Court to act as a fact finder. Because "[i]t is solely the province of the [ALJ] to resolve conflicts in the evidence and assess the credibility of witnesses," the Court must refuse to reweigh the evidence or substitute its judgment for that of the ALJ. *Bloodsworth*, 703 F.2d at 1239; *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015). Even if the evidence preponderates against the Commissioner, the Court must affirm if the decision is supported by substantial evidence. *Bloodsworth*, 703 F.2d at 1239. The ALJ has met this low bar. His decision contains a robust summary of the evidence and explanations for his findings at each step of the analysis. More importantly, Cruz has failed to show there is an "absence of substantial evidence supporting the ALJ's conclusion." *Id.* Rather, she mostly points to evidence she believes supports her argument. This does not warrant reversal.

The Court further finds the ALJ considered the longitudinal evidence, accounting for Cruz's fibromyalgia-related bad days. In his decision, the ALJ "need not refer to every piece of evidence so long as his decision does not broadly reject a claim for Social Security benefits." *Kyne v. Berryhill*, No. 8:17-CV-2272-AAS, 2018 WL 6381426, at *3 (M.D. Fla. Dec. 6, 2018). An ALJ considering an application premised upon fibromyalgia must "consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have bad days and good days." SSR

12-2p. This encompasses all the evidence, especially the applicant's medical records. When objective medical records reflecting ongoing medical evaluation and treatment do not support the applicant's claim, SSR 12-2p explains what the ALJ should consider as part of the longitudinal record:

> If objective medical evidence does not substantiate the [claimant's] statements about the intensity, persistence, and functionally limiting effects of the fibromyalgia symptoms, the ALJ will consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate the symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms.

SSR 12-2p; *see also Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 988 (11th Cir. 2015).

Here, the ALJ provided a detailed summary of the evidence, which spans a decade, citing Cruz's daily activities, the frequency and nature of her doctor appointments, the notes within her medical records, and the relief she experienced from the medications and treatments she received. (Tr. 1726-27, 1730-40). The evidence cited by the ALJ shows Cruz had both good and bad days. (*See Id.*) The evidence cited also supports the ALJ's conclusions. That Cruz believes the ALJ should have highlighted more evidence of her bad days in his decision does not change this. The Court is satisfied the ALJ considered

10

the longitudinal evidence, in accordance with SSR 12-2p, in rendering his decision.

Finally, Cruz asserts the ALJ's analysis was "rote." The Court disagrees. Even if portions of the ALJ's analysis were not overly robust, his decision is sufficient considering his detailed discussion of the longitudinal evidence. *See, e.g., Roussin v. Comm'r of Soc. Sec.,* No. 2:20-cv-905-SPC-MRM, 2021 WL 6205948, at *10 (M.D. Fla. Dec. 16, 2021); *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses[.]").

### B. There Was No Error with the ALJ's Assessment of the Vocational Evidence

As mentioned, if the ALJ finds that a claimant cannot perform past relevant work he must show the existence of other jobs in the national economy that the claimant can perform. In making this determination, the ALJ may consider both the information contained in the Dictionary of Occupational Titles (DOT) and testimony from a vocational expert. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1360 (11th Cir. 2018). An ALJ has an "affirmative duty to identify apparent conflicts" between the vocational expert and the DOT. *Id.* And once a conflict is identified, the ALJ is required "to offer a reasonable explanation for the discrepancy, and detail in his decision how he

11

has resolved the conflict." *Id*. Per the Eleventh Circuit, an apparent conflict is "a conflict that is reasonably ascertainable or evident from a review of the DOT and the [vocational expert's] testimony." *Id*. at 1365.

To determine Cruz's capacity to work, the ALJ posed several hypotheticals to a vocational expert. One hypothetical asked the expert to consider a person who could only perform sedentary work that does not involve written instructions. (Tr. 1800-01, 1803.) The expert, in turn, identified several jobs this hypothetical person could perform. (Tr. 1803.) He further testified that his opinion was consistent with the DOT. (*Id*.)

Cruz claims the ALJ had to consider her "inability to read, write and/or communicate in English . . . because . . . the identified jobs by the [vocational expert] at the claimant's hearing contemplated a hypothetical for an individual who would require no written instructions." (Doc. 25 at 44.) In other words, the ALJ had to consider that Cruz doesn't speak English. And this creates a discrepancy with the DOT because the jobs identified by the vocational expert (and adopted by the ALJ) have "language development levels" of either 1 or 2. (*Id*. at 43.)

This argument goes nowhere. Cruz is not illiterate. She can speak Spanish. She also reported the ability to read and understand English, as well as the ability to understand written instructions. (Tr. 2139, 2152.) Given this evidence, there was no apparent discrepancy between the vocational expert's

12

testimony and the DOT. *See Piloto v. Saul*, No. 20-21788-CV, 2021 WL 4244865, at *4 (S.D. Fla. Sept. 6, 2021). "[T]he Eleventh Circuit has held that jobs with a language level of two do not specifically require that the claimant's language be English." *Id.* at *5.

Cruz says this case is indistinguishable from the error identified in *Frazier v. Kijakazi*, No. 8:20-CV-1736-CPT, 2022 WL 950649 (M.D. Fla. Mar. 30, 2022). Not so. The claimant in *Frazier* was illiterate. Thus, there was "little question [of] at least an apparent conflict between the VE's testimony about the jobs [he] could perform despite his illiteracy and the language requirements of those occupations as set forth in the DOT." *Id.* at *4. Cruz is not illiterate. She can apparently read, write, and follow directions *in English*. (Tr. 2139.) Considering these reported abilities, it was not error for the ALJ to accept the vocational expert's testimony. *See, e.g.*, *Viotes v. Saul*, No. 1:19-CV-24223-JLK, 2021 WL 681892, at *10 (S.D. Fla. Jan. 19, 2021).

Finally, even if there was error, it was harmless because Cruz "is still capable of performing the unskilled jobs identified by" the vocational expert. *Castro v. Kijakazi*, No. 6:20-CV-972-SPF, 2021 WL 4452790, at *4 (M.D. Fla. Sept. 29, 2021). The jobs in question "do not require significant English language literacy." *Id.*

## IV. Conclusion

Considering the record as a whole, the Court is satisfied the ALJ followed the applicable regulations and based his conclusions on substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision and directs the Clerk to enter judgment for the Commissioner and close the file.

**ORDERED** in Fort Myers, Florida on November 13, 2023.

Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record